United States Court of Appeals,

Fifth Circuit.

No. 91-2454.

RESIDENT COUNCIL OF ALLEN PARKWAY VILLAGE, et al., Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT, et al.,
Defendants-Appellants.

Jan. 13, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, JOHNSON and DUHÉ, Circuit Judges.

KING, Circuit Judge:

This appeal arises from a lawsuit filed by residents of Allen Parkway Village, a Houston public housing project, to prevent the proposed demolition of that project. The Housing Authority of the City of Houston appeals the district court's April 4, 1991 order awarding permanent injunctive relief against it and the United States Department of Housing and Urban Development. Because we conclude that the residents of Allen Parkway Village have not stated a claim for which such relief could be granted and are not, at this time, entitled to judicial review under the Administrative Procedure Act, we reverse the district court's April 4, 1991 order granting permanent injunctive relief and remand with instructions to dismiss the residents' complaint.

I. BACKGROUND

Allen Parkway Village (APV), which was built in the 1940s, is one of Houston's oldest public housing projects. It is owned and operated by the Housing Aut hority of the City of Houston (HACH), a state agency established to provide low income persons with safe and affordable housing. *See* TEX.LOC.GOV'T CODE ANN. § 392.011 (Vernon 1988). Under the terms of HACH's long term annual contributions contract with the United States Department of Housing and Urban Development (HUD), HACH receives federal funds to subsidize low-income housing.

In 1979, under the Public Housing Urban Initiative Program, HUD provided $10 million to HACH for the modernization of APV. The funds were specifically reserved for HACH's use. *See*

24 C.F.R. Part 868 (1979).  During the next five years, HACH used approximately $1.5 million of the federal modernization funds.

In August 1984, pursuant to the procedures set forth in 42 U.S.C. § 1437p, HACH submitted an application to HUD to demolish APV.  According to HACH, demolition of APV was necessary because the housing project was "obsolete," "physically deteriorated," and "located in a neighborhood which is blighted."  The demolition application also contained, as required by § 1437p, a relocation plan for residents and a replacement housing plan to compensate for the loss of APV's 1,000 housing units.

Before HUD had acted on HACH's application to demolish APV and before any demolition had occurred, on December 27, 1987, Congressmen Marvin Frost and Mickey Leland introduced an amendment to an appropriations bill for HUD.  The Frost-Leland Amendment, which was passed by Congress, provides as follows:

> None of the funds provided by this Act or any other Act for any fiscal year shall be used for demolishing George Loving Place, at 3320 Rupert Street, Edgar Ward Place, at 3901 Holystone, Elmer Scott Place, at 2600 Morris, in Dallas, Texas, *or Allen Parkway Village, 1600 Allen Parkway, in Houston, Texas.*

United States Department of Housing and Urban Development—Independent Agencies Appropriations Act, 1988, Pub.L. No. 100-202, Title IV, § 415, 101 Stat. 1329-213 (emphasis added).

Two years after the passage of the Frost-Leland Amendment, on January 25, 1989, the Resident Council of Allen Parkway Village (Resident Council) and two individual residents of APV (collectively, Plaintiffs) filed suit against HUD and HACH in federal district court.  The purpose of the suit was to enforce the Frost-Leland Amendment and to prevent both HUD and HACH from using federal funds to "prepare, revise and advance" the APV demolition application.  The Plaintiffs asserted jurisdiction under 28 U.S.C. § 1331 and sought declaratory and injunctive relief under the Frost-Leland Amendment itself, under 42 U.S.C. § 1983, and under the Administrative Procedure Act, 5 U.S.C. § 501 et seq.

The district court granted the Plaintiffs' request for a preliminary injunction against HACH on April 13, 1989.  No preliminary injunction was requested against HUD, however, because HUD

had agreed to keep the Plaintiffs advised of the progress of HACH's demolition application. In granting the preliminary injunction against HACH, the district court first held that the Plaintiffs had "standing" under 42 U.S.C. § 1983 to bring this action. The district court noted that implicit in 42 U.S.C. § 1437p(b) "is the right of the tenant, or the tenant council, to bring suit to protect the status of residents who would be affected by any demolition and displacement" of a public housing facility. The district court further reasoned that, once it is established that a plaintiff is a resident of a public housing facility, "that tenant may enforce any federal statutory right appertaining to that status and the facility, particularly where the activity complained of falls into an area protected or regulated by statute." The district court then defined the phrase "for demolishing" in the Frost-Leland Amendment as referring not only to the physical act of destruction, but also "to the process by which destruction is commenced and finished." *Id.* Finally, because it concluded that the Plaintiffs were likely to prevail on their § 1983 claim, the district court granted their application for a temporary injunction.

On December 5, 1989, HUD returned HACH's application for the demolition of APV as unapproved. In the letter returning the application, HUD reminded HACH that it had a legal obligation to operate the development as public housing. HUD also informed HACH that federal funds were available for modernization of APV and set a deadline for HACH to decide on future development. As HUD had requested, HACH submitted its plan for developing APV on January 12, 1990. The plan called for either new construction or comprehensive rehabilitation of 150 units. The remaining units, according to the plan submitted by HACH, were "slated for removal." After this plan was submitted, HUD requested that HACH take immediate action (i.e., within 90 days) to furnish a formal application for approval with respect to any long term modernization, demolition and/or disposition of APV. HACH never responded to HUD's request.

The district court granted the permanent injunction at issue in this appeal on April 4, 1991. In its order, the district court first held that, despite HUD's decision to return HACH's application for demolition as unapproved, the case was not moot. The district court specifically stated that "[t]here are live issues in this case as long as HACH fails to use allocated federal funds for their intended purposes, maintenance and renovation of APV, and simultaneously insists on spending the allocated

funds on studies that are designed to defeat those purposes." The district court then proceeded to the merits of the Plaintiffs' claim for declaratory and injunctive relief and reaffirmed its prior definition of the phrase "for demolishing" in the Frost-Leland Amendment as including studying, preparing, or taking steps towards demolition. Ultimately, the district court:

(1) prohibited HACH from spending any federal funds on any activity that "promotes, advances, or explores the total demolition of APV," including activity designed to establish that rehabilitation and renovation of part or all of APV are useless;

(2) ordered HACH to furnish an accounting of all expenditures of federal funds allocated to HACH since 1979;

(3) ordered HACH to present, within 60 days, a plan to use federally appropriated funds for the repair and upgrading of all or part of APV;

(4) granted the permanent injunction requested to the full extent of the Frost-Leland Amendment;

(5) ordered HUD to set aside the funds remaining from the $10 million appropriation to HACH in 1979;

(6) ordered HACH to submit, under separate cover, an accounting of all expenditures of funds set aside for the repair and renovation of APV as well as all rent subsidies that are now and have been allocated and paid to HACH for the APV apartments; and

(7) ordered all discovery associated with the 42 U.S.C. § 1983 claims be completed within 90 days.

On May 2, 1991, HACH filed a timely notice of appeal from the district court's order. HUD did not file any such notice. On August 27, 1991, however, this court granted HUD's uncontested motion to be realigned as an appellant in this court for purposes of briefing.

## II. JURISDICTIONAL PROBLEMS

Before we review the district court's April 4, 1991 order granting permanent injunctive relief against HACH and HUD, we address two jurisdictional problems. The first jurisdictional problem concerns the district court's power to award injunctive and declaratory relief. It requires us to decide whether HUD's decision to return the APV demolition application as unapproved renders the controversy between the Plaintiffs and HUD and HACH moot. The second such problem concerns our appellate jurisdiction, and in particular, our ability to review that portion of the district court's order directed at HUD.

A. The Effect of HUD's Decision to Return the Demolition Application

In district court, HUD and HACH contended that the Plaintiffs' request for declaratory and injunctive relief was moot. They argued that the passage of time, and particularly, HUD's decision to return the APV demolition application as unapproved, eliminated any justiciable controversy. For the following reasons, we agree with the district court that there is still a live controversy between the Plaintiffs and HUD and HACH under Article III of the Constitution.

A controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interests to maintain the litigation. *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1859). Mootness can arise in one of two ways: First, a controversy can become moot "when the issues presented are no longer "live.' " *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). A controversy can also become moot when "the parties lack a legally cognizable interest in the outcome." *Id.*

In this case, HUD's decision to return HACH's demolition application does not render the Plaintiffs' request for injunctive relief moot. "Mere voluntary cessation of allegedly illegal conduct does not moot a case" in which injunctive relief is sought. *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). And, although "[a] case might become moot if subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *id.,* such is not the case here. HUD's decision to return HACH's demolition application does not prevent HACH from subsequently filing another such application. Nor does HUD's decision with respect to the first application foreclose the possibility that a subsequent demolition application might be approved by HUD. In short, HUD's decision to return HACH's demolition application as unapproved simply does not "ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Accordingly, there was, at the time the district court granted permanent injunctive relief, and still is, a live controversy between the Plaintiffs and HUD and HACH.

B. The Effect of HUD's Failure to File a Notice of Appeal

The more complicated jurisdictional question, in our view, concerns HUD's failure to file a timely notice of appeal. As we have already noted, HACH filed a timely notice of appeal, but HUD

did not. HUD subsequently moved to be realigned as an "appellant" for purposes of briefing and was permitted to file a brief and argue before this court. After explaining HUD's status before this court, we must decide whether HACH may properly appeal the portion of the district court's order directed to HUD.

1. *HUD's status in this appeal*

Under the Federal Rules of Appellate Procedure, an appeal "shall be taken by filing a notice of appeal with the clerk of the district court within the time allowed by Rule 4." FED.R.APP.P. 3(a). The notice of appeal must "specify the party or parties taking the appeal" and must "designate the judgment, order or part thereof appealed from." *Id.* 3(c). A timely notice of appeal containing the components set forth in Rule 3(c) is a mandatory precondition to exercise of jurisdiction by a court of appeals. *See Browder v. Director, Illinois Dep't of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978); *Nelson v. Foti,* 707 F.2d 170, 171 (5th Cir.1983).

Because HUD did not timely file and was not otherwise named in a notice of appeal, HUD is not an "appellant" before this court. The notice of appeal filed by HACH, which specified only that *HACH* desired to appeal from the district court's April 4, 1991 order, does not vest this court with jurisdiction over an appeal by HUD. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 317, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988) (court of appeals had no jurisdiction over appeal by party who did not file the functional equivalent of a notice of appeal and was never named or otherwise designated in the notice of appeal filed by others). Nor does this court have jurisdiction over an appeal by HUD merely because HUD was a party below and "realigned" itself for purposes of filing a brief in support of HACH's appeal. *See Farley Transp. Co. v. Santa Fe Trail Transp. Co.,* 778 F.2d 1365, 1369-70 (9th Cir.1985) (Federal Rules of Appellate Procedure do not mirror Supreme Court Rules, under which "[a]ll parties to the proceeding in the court from whose judgment the appeal is being taken" are deemed to be parties to the appeal absent written notification to the contrary); *cf. Diamond v. Charles,* 476 U.S. 54, 63, 106 S.Ct. 1697, 1704, 90 L.Ed.2d 48 (1986) (status as a "party" under Supreme Court Rules does not equate with status as an appellant; rather, "[t]o appear before the Court as an appellant, a party must file a notice of appeal, the statutory prerequisite to

invoking [the] Court's jurisdiction.").

HUD's status before this court is more akin to the status of an amicus curiae. HUD has an interest in HACH's appeal, but is not a party to the appeal. *See New England Patriots Football Club, Inc. v. University of Colorado,* 592 F.2d 1196, 1198 n. 3 (1st Cir.1979) (an amicus is one who, not as a party, gives information of some matter of law in regard to which the court is doubtful or mistaken); *see also Funbus Systems, Inc. v. State of California Public Utilities Comm'n,* 801 F.2d 1120, 1125 (9th Cir.1986) ("[T]here is no rule that amici must be totally disinterested."). Under this view, HUD's motion to be realigned as an appellant for purposes of briefing may be construed as a motion to file an amicus brief under Rule 29 of the Federal Rules of Appellate Procedure. Because Rule 29 provides that a federal agency such as HUD may file an amicus brief even without consent of all parties or leave of court, *see* FED.R.APP.P. 29, we may properly consider the arguments raised by HUD. We are constrained only by the rule that an amicus curiae generally cannot expand the scope of an appeal to implicate issues that have not been presented by the parties to the appeal.[1] *See Christopher M. v. Corpus Christi Indep. School Dist.,* 933 F.2d 1285, 1292 (5th Cir.1991) (amicus curiae ordinarily cannot raise an issue that has not been raised by the parties absent exceptional circumstances) (citing *United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 60 n. 2, 101 S.Ct. 1559, 1562 n. 2, 67 L.Ed.2d 732 (1981)). *But compare Teague v. Lane,* 489 U.S. 288, 300, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989) (addressing question of retroactivity of habeas petitioner's claim despite fact that it was raised only in an amicus brief).

2. *HACH's standing to appeal portions of the order directed at HUD*

The real problem with HUD's failure to file a notice of appeal is one of HACH's standing. While most of the district court's April 4, 1991 order is directed at HACH, at least one part is specifically directed at HUD. In particular, the district court ordered HUD to set aside the funds remaining from the $10 million appropriation to HACH in 1979. We must therefore determine whether HACH has standing to appeal from this portion of the district court's April 4, 1991 order.

---

[1]In this regard, we note that HUD, in its brief to this court, has not attempted to expand the scope of HACH's appeal. Instead, it has confined its arguments to those raised by HACH.

If HACH does not have standing to assert that the district court erred in ordering HUD to set aside the remainder of the 1979 modernization funds, then this portion of the district court's order must stand. In the words of the Supreme Court, "[b]y not appealing the judgment below, [HUD] indicated its acceptance of that decision...." *Diamond,* 476 U.S. at 63, 106 S.Ct. at 1704.

The Article III standing requirement stems from the limited power of federal courts to decide only "cases" and "controversies." To establish Article III standing, a party seeking judicial resolution of a dispute must show more than the presence of a disagreement. *Diamond,* 476 U.S. at 62, 106 S.Ct. at 1703. He must also "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct...." *Id.* (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)). In other words, he must show that he is not just a "concerned bystander," *see United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973), but someone with "a direct stake in the outcome," *see Sierra Club v. Morton,* 405 U.S. 727, 740, 92 S.Ct. 1361, 1369, 31 L.Ed.2d 636 (1972).

We conclude that HACH has standing to attack the validity of all portions of the district court's April 4, 1991 order, including the part that is nominally directed to HUD. The money the district court ordered HUD to set aside is, after all, money that has already been appropriated to HACH. In its April 4 order, then, the district court effectively instructed HUD to withhold or recover money that had already been appropriated to HACH. Thus, HACH is more than just a "concerned bystander" with respect to the district court's instructions to HUD: HACH has a direct monetary stake in attacking this portion of the district court's order. Accordingly, HUD's failure to file a timely notice of appeal, while it precludes HUD from being an appellant in this court, has no effect on our ability to reach the merits of all the complaints levelled by HACH against the district court's April 4, 1991 order.

### III. THE DISTRICT COURT'S ORDER GRANTING INJUNCTIVE RELIEF

HACH and HUD argue that the district court's April 4, 1991 order granting permanent injunctive relief against them cannot stand. They argue initially that the Plaintiffs have failed to state a claim for which such relief may be granted. In this regard, they argue that the Plaintiffs (a) have not

stated a claim for which relief can be granted under 42 U.S.C. § 1983, (b) have not stated a claim for which relief can be granted under the Frost-Leland Amendment itself, and (c) are not entitled to judicial review under the Administrative Procedure Act. HACH and HUD further contend that, even if the Plaintiffs had stated a claim for which relief could be granted, the district court erred in interpreting the Frost-Leland Amendment to prohibit the expenditure of federal funds for studying, preparing, or taking steps towards demolition. Because we agree that the Plaintiffs have failed to state a claim for which relief can be granted and are not entitled to judicial review under the Administrative Procedure Act, we do not address the district court's interpretation of the Frost-Leland Amendment.

A. Have the Plaintiffs' Stated a Claim for Which Relief Can Be Granted under Section 1983?

On appeal the Resident Council maintains that the Plaintiffs have stated a claim for which relief can be granted under 42 U.S.C. § 1983. We disagree. To state a valid claim under § 1983, a plaintiffs must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988) (citing cases). With regard to their claim against HACH, the Plaintiffs have not alleged a violation of "rights secured by the Constitution or laws of the United States." And, with regard to their claim against HUD, the Plaintiffs cannot show that HUD has acted "under color of state law."

1. *Against HACH?*

Pointing to the Supreme Court's decision in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1979), the Resident Council argues that the Plaintiffs have stated a claim for which relief may be granted against HACH. The Resident Council first notes that, according to the Court in *Thiboutot,* § 1983 provides a cause of action for violations of federal statutes under color of state law. The Resident Council reasons that, because the Frost-Leland Amendment is a federal statute, a violation of that amendment by agents of the state such as HACH, is redressable under § 1983.

We recognize that, in *Thiboutot,* the Court concluded that § 1983 provides a cause of action for violations of federal statutes, not just the Constitution, under color of state law. 448 U.S. at 4-8,

100 S.Ct. at 2504-2506. Since *Thiboutot,* however, the Supreme Court has recognized that not every violation of a federal statute under color of state law is redressable under § 1983. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). First, no § 1983 cause of action for a violation of a federal statute will lie where "Congress has foreclosed such enforcement of the statute in the enactment itself." *Wright v. City of Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). Second, § 1983 will not provide a cause of action for a violation of a federal statute where the federal statute in question does not "create enforceable rights, privileges, or immunities within the meaning of § 1983." *Id.* In this case, it is the second exception that is at issue. Accordingly, we must decide whether the Frost-Leland Amendment creates an enforceable federal right within the meaning of § 1983.[2]

The Supreme Court set forth a framework for analyzing whether a federal statutory provision creates an enforceable federal right within the meaning of § 1983 in *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990). The first and most important question under this framework is "whether "the provision in question was intend[ed] to benefit the putative plaintiff.' " *Id.* (citation omitted). If the answer to the first question is "yes," then the federal statutory provision creates an enforceable right unless (1) it reflects merely a congressional preference for certain kind of conduct rather than a binding obligation on the governmental unit or (2) the interest the plaintiff asserts is too vague and amorphous, such that it is beyond the competence of the judiciary to enforce. *Id.*

The Supreme Court's most recent decision on the issue of whether a federal statute creates an enforceable right within the meaning of § 1983, however, *Suter v. Artist M.,* --- U.S. ----, 112

---

[2]It is important to note that the Plaintiffs are seeking to enforce rights allegedly created by the Frost-Leland Amendment, and not rights secured by 42 U.S.C. § 1437p. In their brief on appeal, the Resident Council's first reply point states that "THE FROST LELAND AMENDMENT PROVIDES THE RESIDENT COUNCIL AND TENANTS OF APV WITH SUBSTANTIVE AND IMPLIED RIGHTS TO A PRIVATE CAUSE OF ACTION UNDER 42 U.S.C. SECTION 1983." Thus, while the district court may have been correct in stating that 42 U.S.C. § 1437p creates enforceable federal rights, the question is whether the Frost-Leland Amendment creates such rights.

S.Ct. 1360, 118 L.Ed.2d 1 (1992), calls into question the continued viability of the framework set forth in *Wilder.* In his dissenting opinion in *Suter,* Justice Blackmun argued that the majority did not even apply the framework set forth in *Wilder. See Suter,* --- U.S. at ----, 112 S.Ct. at 1371 (Blackmun, J., joined by Stevens, J., dissenting). According to the First Circuit, the *Wilder* framework "fell on hard times" in the Supreme Court's *Suter* decision. *Stowell v. Ives,* 976 F.2d 65, 68 (1st Cir.1992).

The issue raised in *Suter* was whether private individuals had the right to enforce by suit a provision of the Adoption Assistance and Child Welfare Act of 1980—a statute, the Court emphasized, that was enacted pursuant to Congress' spending power. *Id.* --- U.S. at ----, 112 S.Ct. at 1366. The specific provision sought to be enforced by the plaintiffs in *Suter* required the State—in order to be eligible for reimbursement from the federal government for certain expenses incurred in administering foster care and adoption services—to submit a plan to the Secretary which provided that, prior to the placement of a child in foster care, "reasonable efforts" would be made to prevent removal of a child from his home and to make it possible for the child to return to his home. 42 U.S.C. § 671(a)(15). In deciding whether the provision requiring the State to use "reasonable efforts" created a federal right enforceable under § 1983, the *Suter* Court framed the question as follows:

> Did Congress, in enacting the Adoption Act, *unambiguously confer* upon the child beneficiaries of the Act a right to enforce the requirement that the State make "reasonable efforts" to prevent a child from being removed from his home, and once removed to reunify the child with his family?

--- U.S. at ----, 112 S.Ct. at 1367 (emphasis added). The Court then proceeded to analyze exactly what the statute required the State to do. Ultimately, the Court concluded that the language of the statute did not "unambiguously confer" an enforceable right on the statute's beneficiaries. *Id.* at ----, 112 S.Ct. at 1370. It stated: "The term "reasonable efforts' in this context is at least as plausibly read to impose only a rather generalized duty on the state, to be enforced not by private individuals, but by the Secretary [of Health and Human Services] in the manner previously discussed." *Id.*

In this case, we need not decide whether *Suter* "effected a sea change in the Court's approach to section 1983," *Stowell,* 976 F.2d at 68, because even under the *Wilder* framework, the Frost-Leland Amendment does not create a federally enforceable right within the meaning of § 1983. Even

if, under the first *Wilder* prong, the residents of APV were the intended beneficiaries of the Frost-Leland Amendment, a straightforward reading of the provision indicates that the Frost-Leland Amendment imposes no "binding obligation on the States." *Wilder,* 496 U.S. at 510, 110 S.Ct. at 2518. Although stated in mandatory terms, the Frost-Leland Amendment is an appropriations rider directed solely to *HUD,* a federal agency. In our view, Congress, by directing its command to HUD, expressed its intent that HUD—not private individuals such as the residents of APV—should enforce the prohibition against using federal funds to demolish the specified public housing projects.[3] Indeed, it is difficult to believe that Congress would impose a binding obligation on the states in an amendment to a bill appropriating funds to a federal agency. As the First Circuit recognized in *Stowell:* "when a provision in a statute fails to impose a direct obligation on the States, instead placing the onus of compliance with the statute's substantive provisions on the federal government, no cause of action cognizable under section 1983 can flourish." 976 F.2d at 70.

Our conclusion that the Frost-Leland Amendment does not create federally enforceable rights within the meaning of § 1983 is buttressed by the fact that it was enacted pursuant to Congress' spending power. Indeed, this court has stated that the amendment "is strictly appropriational in nature." *Walker v. Unites States Dep't of Hous. & Urban Dev.,* 912 F.2d 819, 828 (5th Cir.1990). And, as a general rule, courts have been reluctant to infer a congressional intent to create private rights under appropriations measures. *See, e.g., California v. Sierra Club,* 451 U.S. 287, 297-98, 101 S.Ct. 1775, 1781-82, 68 L.Ed.2d 101 (1981) (concluding that Congress did not intend to create a federal rights under section 10 of the Rivers and Harbors Appropriation Act); *National Treasury Employees' Union v. Campbell,* 654 F.2d 784, 793-94 (D.C.Cir.1981) (finding no congressional intent to create a private right of action under § 607(a) of the Postal Service and General Government

---

[3]In interpreting the Frost-Leland Amendment, this court has already stated that it eliminates only federal funding of demolition, "not state or local financing." *Walker v. United States Dep't of Hous. & Urban Dev.,* 912 F.2d 819, 829 (5th Cir.1990). The amendment does not, this court continued, "preclude demolitions generally or reverse HUD's *approval* of the demolitions.... Regardless of the sponsor[s'] obvious motivation to derail demolitions, the legislation only withdraws federal appropriations." *Id.*

Appropriations Act of 1979).[4]

In sum, we hold that the Plaintiffs have not stated a cause of action against HACH under 42 U.S.C. § 1983. The statute the Plaintiffs seek to enforce—the Frost-Leland Amendment—is an appropriations measure directed at HUD, a federal agency. It does not impose a binding obligation on public housing agencies such as HACH, and therefore, it does not create federally enforceable rights within the meaning of § 1983.

2. *Against HUD?*

As explained above, to state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988). The Plaintiffs' § 1983 claim against HUD fails on the second element. In *Broadway v. Block,* 694 F.2d 979 (5th Cir.1982), we held that federal officials, acting under color of federal law rather than state law, are not subject to suit under § 1983. *Id.* at 981 (citing cases). Because HUD is a federal agency acting under color of federal law, we hold that the Plaintiffs have not stated a claim against it under § 1983.

B. Have the Plaintiffs' Stated a Claim for Which Relief Can Be Granted under the Frost-Leland Amendment?

The Plaintiffs argue that, even if they have not stated a claim for which relief can be granted under § 1983, they have stated a cognizable claim under the Frost-Leland Amendment itself. They specifically argue that Congress, in passing the amendment, intended to provide the residents of APV with a private right of action against HACH and HUD. For the following reasons, we disagree.

Initially, we note that the Plaintiffs carry a heavy burden in demonstrating that Congress intended to create a private right of action directly under the Frost-Leland Amendment. As this court has recognized: "To establish an implied private right of action under a federal statute, a plaintiff

_____

[4]Although the courts in these cases specifically addressed claims that Congress intended to create a private cause of action under the federal statute itself, *see infra* Part III.B., in doing so, the courts also discussed the question of whether the appropriations statutes created federally enforceable private rights. Thus, these cases are relevant to the determination of whether Congress intended to create a federally enforceable right within the meaning of § 1983.

bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute." *Victorian v. Miller,* 813 F.2d 718, 721 (5th Cir.1987) (en banc). Thus, to state a claim under the Frost-Leland Amendment itself, the Plaintiffs must overcome the presumption that Congress did not intend to create a private right of action.[5]

In determining whether Congress intended to create a private right of action under a federal statute, courts rely on the familiar test of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Under this test, courts are to consider (1) whether the plaintiffs are within the class for whose *especial* benefit the statute was enacted, (2) whether there is evidence of explicit or implicit legislative intent to create or deny a private remedy, (3) whether a private remedy is consistent with or necessary to the purposes underlying the statutory scheme, and (4) whether a federal remedy is inappropriate because the subject matter involves an area that is primarily of concern to the states. *Id.* at 68, 95 S.Ct. at 2083. Applying this test to the Frost-Leland Amendment, we conclude that there is insufficient, if any, evidence to overcome the presumption that Congress did not intend to create a private right of action under the amendment itself.

1. *Against HACH?*

Once the Supreme Court in *Suter* determined that the provision of the Adoption Assistance and Child Welfare Act of 1980 created no federally enforceable rights against the state agency under § 1983, the Court "quickly" disposed of the argument that the federal statutory provision itself created an implied right of action against the state agency. *See* --- U.S. at ----, 112 S.Ct. at 1370. The Court recognized that the crucial inquiry under *Cort,* like the crucial inquiry under § 1983, is whether Congress intended to create the private remedy sought by the plaintiffs. *Id.* The Court reasoned that, where Congress does not intend to create federally enforceable rights against a state agency, Congress could not have impliedly created a private cause of action against such an agency. *See id.; see also Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 28 n. 21, 101 S.Ct.

---

[5]The presumption is reversed in the context of claims brought under 42 U.S.C. § 1983. If a federal statute creates federally enforceable rights, privileges, or immunities under the framework set forth in *Wilder,* as modified by *Suter,* then a violation of the federal statute under color of state law is redressable under § 1983 unless the defendant establishes that Congress intended to withdraw such a remedy. *See Victorian,* 813 F.2d at 720-21.

1531, 1545 n. 21, 67 L.Ed.2d 694 ("Because we conclude that [the statute] confers no substantive rights, we need not reach the question whether there is a private cause of action under [the statute]....").

We can similarly dispose of the Plaintiffs' argument that the Frost-Leland Amendment creates a private right of action against HACH. As already explained, *see supra* Part III.A.1., in passing the Frost-Leland Amendment, Congress intended HUD—not private individuals like the residents of APV—to enforce the prohibition against using federal funds to demolish the specified public housing projects. Because the Frost-Leland Amendment does not create any federally enforceable right against HACH under § 1983, there can be no implied right of action against HACH under the amendment itself. In short, we conclude that Congress did not intend to create a private right of action against public housing authorities such as HACH in passing the Frost-Leland Amendment.

2. *Against HUD?*

We also may dispose "quickly" of the argument that, in passing the Frost-Leland Amendment, Congress intended to create a private right of action against HUD. The First Circuit, in addressing a similar argument—namely, that the Federal Fair Housing Act created a private right of action against HUD—stated:

> [I]t is difficult to understand why a court would ever hold that Congress, in enacting a statute that creates federal obligations, has implicitly created a private right of action against the *federal* government, for there is hardly ever any need for Congress to do so. That is because federal action is nearly always reviewable [under the Administrative Procedure Act] for conformity with statutory obligations without any such "private right of action."

*N.A.A.C.P. v. Secretary of Hous. & Urban Dev.,* 817 F.2d 149, 152 (1st Cir.1987). Because the obligations imposed on HUD under the Frost-Leland Amendment, like the obligations imposed on HUD under the Federal Fair Housing Act, are reviewable under the Administrative Procedure Act, the First Circuit's reasoning is applicable. If HUD has failed to comply with command of the Frost-Leland Amendment, the appropriate course of action for the Plaintiffs is to seek review of the agency's action under the Administrative Procedure Act. *See infra* Part III.C. In short, there is no language in the amendment itself indicative of a congressional intent to create a private cause of action against HUD outside of the Administrative Procedure Act.

In addition to the availability of judicial review under the Administrative Procedure Act, HUD points out, the doctrine of sovereign immunity militates against a finding of congressional intent to create a private right of action under the Frost-Leland Amendment. Citing *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), HUD argues persuasively that, because the Frost-Leland Amendment does not expressly waive sovereign immunity, no right of action against it may be implied. *See also Miller v. United States,* 710 F.2d 656, 668 (10th Cir.) (relying on doctrine of sovereign immunity in refusing to imply a private right of action against the Department of Transportation under the Federal Highway Safety Act), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983). Thus, we hold that Congress did not intend to create a private right of action against HUD when it passed the Frost-Leland Amendment.

C. Are the Plaintiffs' Entitled to Judicial Review Under the Administrative Procedure Act?

Having concluded that the Plaintiffs have not stated a claim for which relief can be granted under § 1983 or under the Frost-Leland Amendment itself, we now turn to the Plaintiffs' final argument in support of the district court's April 4, 1991 order. In particular, we address the argument that the residents of APV are entitled to judicial review of HACH and HUD's actions under the Administrative Procedure Act (APA). We conclude, for the following reasons, that they are not.

Section 702 of the APA gives certain persons the right to obtain judicial review of particular agency actions. It provides, in pertinent part, that

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof....

5 U.S.C. § 702. The Plaintiffs cannot obtain judicial review of HACH's actions under § 702, because HACH is not an "agency" within the terms of the statute. The Plaintiffs are not at this time entitled to review of HUD's actions, because HUD has not engaged in any "agency action"—or more appropriately, *final* agency action—within the meaning of § 702.

1. *Of HACH's actions?*

HACH argues that the Plaintiffs could not possibly be entitled to review of its actions under the APA, because it is not an "agency" within the terms of § 702. We agree. In *Vieux Carre*

*Property Owners, Residents & Associates, Inc. v. Brown,* 875 F.2d 453 (5th Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 720, 107 L.Ed.2d 739 (1990), we identified the "APA as a route through which private plaintiffs can obtain federal court review of the decisions of *federal* agencies." 875 F.2d at 456 (emphasis added). We emphasized that the right of review under section 702 does not give district courts the "jurisdiction to enjoin such nonfederal entities as the Audobon Park Commission." *Id.; see also* 5 U.S.C. § 701(b)(1) (defining term "agency" as "each authority of the Government of the *United States,* whether or not it is within or subject to review by another agency") (emphasis added). Because HACH is a nonfederal entity, the district court lacked the power to enjoin it under the APA.

2. *Of HUD's actions?*

HACH and HUD also argue that the Plaintiffs are not entitled to judicial review of HUD's actions under the APA. They argue specifically that HUD has not engaged in any final agency action that is subject to review under § 702. Again, we agree.

The term "agency action" under section 702 is broadly defined as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). In *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), however, the Supreme Court made clear that "[w]hen, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under general review provisions of the APA, the "agency action' in question must be "final agency action.' " *Id.* at ----, 110 S.Ct. at 3185 (citing 5 U.S.C. § 704). Whether agency action is "final," in turn, depends on several pragmatic factors: whether the challenged action is a definitive statement of the agency's position; whether the action has the status of law with penalties for noncompliance; whether the impact on the plaintiff is direct and immediate; and whether immediate compliance is expected. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 150-52, 87 S.Ct. 1507, 1516-17, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

Applying these pragmatic factors to the case at hand, we conclude that the Plaintiffs do not seek review of any final agency action by HUD. The Plaintiffs are not seeking review of HUD's

decision to return HACH's demolition application. Nor are they seeking review of an order or rule that defines the phrase in question under the Frost-Leland Amendment. Rather, at best they are seeking review of HUD's internal administrative interpretation of the Frost-Leland Amendment.[6]

In *Taylor-Callahan-Coleman Counties District Adult Probation Department v. Dole,* 948 F.2d 953, 957-59 (5th Cir.1991), this court addressed the question of whether opinion letters issued by the United States Department of Labor constituted "final agency action." We held that such letters did not constitute final action, because they were "threshold determinations." *Id.* at 959. We reasoned that the opinion letters did not definitively set out agency policy, did not have the status of law with penalties for noncompliance, did not have an immediate impact on the plaintiff, and did not require immediate compliance. *Id.* at 959; *see also Air California v. United States Dep't of Transp.,* 654 F.2d 616, 619-20 (9th Cir.1981) (holding that an interpretive letter sent by the Chief Counsel of the Federal Aviation Administration was not final agency action).

---

[6]The Plaintiffs also suggest that they are entitled to judicial review of HUD's failure to prohibit HACH from spending the 1979 modernization funds to study demolition—or more generally, HUD's failure to require HACH to spend the 1979 funds in a particular way. To the extent that the Plaintiffs are complaining about HUD's refusal to require HACH to spend the remainder of the 1979 modernization funds in a particular way, HUD is correct in arguing that no action under the APA will lie. In *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under 5 U.S.C. § 701(a)(2)" *Id.* at 832, 105 S.Ct. at 1656; *see also Hill v. Group Three Hous. Dev. Corp.,* 799 F.2d 385, 396 (8th Cir.1986) (holding that HUD's decision not to enforce provisions of Housing Act against private landlords was not reviewable under the APA). "[T]he presumption may be rebutted," the Court continued, "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Heckler,* 470 U.S. at 832-33, 105 S.Ct. at 1656.

The presumption against reviewability has not rebutted in this case. Indeed, in its brief, HUD notes that "there are no standards for a court to enforce with respect to HUD enforcement of the [modernization] grant to [HACH]." In fact, the only "enforcement action" that HUD may apparently take with regard to such funds is to revise HACH's modernization budget. *See* 24 C.F.R. 868.12 (1979). Moreover, there are no requirements concerning when such a revision action must be taken. Accordingly, we conclude that the Plaintiffs cannot seek review under the APA of HUD's refusal to require HACH to use the 1979 funds for modernizing APV.

Furthermore, we note that the Plaintiffs have sought relief with respect to the 1979 modernization funds in a separate lawsuit filed in 1987. *See Allen Parkway Village Residents v. Housing Authority of the City of Houston,* No. H-87-564 (S.D.Tex) (*APV I* ). This lawsuit, which has been stayed by the district court, was filed two years prior to the lawsuit giving rise to this appeal. We trust that the district court will now move to resolve the issues in *APV I* concerning HACH's use of the 1979 modernization funds.

Like the opinion letters at issue in *Taylor-Callahan-Coleman,* HUD's internal and informal administrative interpretation of the Frost-Leland Amendment is not final agency action. The interpretation does not definitely set out HUD's policy on the issue of what constitutes "demolishing" within the terms of the Frost-Leland Amendment. Moreover, the interpretation does not have the status of law, does not have a direct and immediate impact on the Plaintiffs, and does not require immediate compliance by HACH. Thus, HUD and HACH are correct in arguing that the Plaintiffs have no right of review with respect to HUD's internal administrative interpretation of the Frost-Leland Amendment.

Were HUD to formally define the phrase "for demolishing" under the Frost-Leland Amendment or approve an application by HACH to demolish all or part of APV, the residents of APV would undoubtedly have the right to review HUD's final agency action under § 702 for compliance with the Frost-Leland Amendment. The residents would, in such a case, be entitled to a judicial determination of whether the agency's definition of "for demolishing" complied with the principles set forth by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1988), or whether any federal funds were being expended "for demolishing" APV. As this case now stands, however, HUD has simply not engaged in any final agency action that is reviewable under § 702. Thus, the district court was without power to award permanent injunctive relief against HUD under the Administrative Procedure Act.

## IV. CONCLUSION

Because the Plaintiffs have not stated a claim for which relief can be granted and are not, at this time, entitled to judicial review under the APA, we do not reach the question of whether the district court erred in interpreting the phrase "for demolishing" in the Frost-Leland Amendment. *See California v. Sierra Club,* 451 U.S. 287, 298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981) (a ruling that there is no private claim under a federal statute disposes of the case, because a court "cannot consider the merits of a claim which Congress has not authorized"); *Taylor-Callahan-Coleman Counties,* 948 F.2d at 956 (a determination that there is no final agency action under the APA means

that there is no subject matter jurisdiction over dispute).  For the foregoing reasons, we REVERSE the district court's April 4, 1991 order awarding permanent injunctive relief against HACH and HUD and REMAND the case with instructions that the Plaintiffs' complaint be dismissed.