# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 15, 2013

No. 12-10969
Summary Calendar

Lyle W. Cayce
Clerk

TERRY R. JAMES,

Plaintiff-Appellant

v.

DALLAS HOUSING AUTHORITY and SHEILA ANN REYNOLDS,

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-1005

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiff Terry R. James ("James") appeals the district court's order granting summary judgment for defendant Dallas Housing Authority ("DHA") and Sheila Ann Reynolds ("Reynolds") in a 42 U.S.C. § 1983 suit arising from the termination of James' housing assistance. Finding no error, we AFFIRM the judgment of the district court.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 12-10969

## BACKGROUND

Until the events giving rise to this suit, James was the recipient of Section 8 housing assistance since June of 2007. On December 16, 2010, James was arrested and jailed on domestic assault charges and was indicted of those charges in early 2011. The indictment alleged that James "intentionally, knowingly and recklessly caused bodily injury to another . . . by impeding the normal breathing and circulation of the complainant's blood by applying pressure to the complainant's throat and neck and by blocking the complainant's nose and mouth with the use of [his] hands," and that James had a dating relationship with the victim and was a member of the victim's household. On March 1, 2011, DHA issued a letter notifying James that his housing assistance would be terminated because he had failed a criminal background screening. James requested an informal hearing. On March 17, 2011, DHA granted James' request for an informal hearing in a letter notifying him of his right to be represented by an attorney, to present oral and written evidence, to question witnesses deposed therein, and to argue his case prior to the hearing officer's decision.

The hearing was held on April 20, 2011 and was presided over by Reynolds, a DHA hearing officer. The evidence against James consisted of his criminal background check, which included the factual allegations surrounding James' December 16, 2010 arrest and revealed an October 2010 domestic violence conviction and assault charges arising from a 1997 incident. James testified on his own behalf and denied the domestic violence allegations resulting in his December 16, 2010 arrest, and stated the charges were dismissed; however, he admitted to having been previously convicted of misdemeanor assault via a guilty plea in October of 2010. James further claimed that he pleaded guilty to the October 2010 assault solely in order to be released from jail. Reynolds concluded that James was not credible and, based on a preponderance

2

No. 12-10969

of the evidence, upheld DHA's decision to terminate James' housing assistance. She issued a letter to James on May 11, 2011 reflecting her decision.

James initiated this suit shortly thereafter, on May 16, 2011, naming as defendants DHA and Reynolds in her individual capacity. James alleges violations of his statutory and constitutional rights under the United States Housing Act of 1937, as amended at 42 U.S.C. § 1437, and he asserts violations of his Fifth, Sixth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. James filed a motion for summary judgment and a motion to join the United States Department of Housing and Urban Development ("HUD") as a defendant under Federal Rule of Civil Procedure 19. The district court granted James' motion to withdraw his motion for summary judgment without referencing James' Rule 19 motion to join HUD.[1] The defendants filed a motion for summary judgment, asserting that James failed to establish the deprivation of a constitutional right, that James failed to identify a DHA policy that was the moving force behind any constitutional violation, and that Reynolds was entitled to qualified immunity. The district court granted the defendants' motion, and James timely appealed.[2]

---

[1] "Under these circumstances, the motion . . . was impliedly denied." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991); *accord, e.g.*, *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003) (discussing propriety of "implicit denial of [plaintiff's] motion"); *Austin v. Johnson*, 328 F.3d 204, 208 (5th Cir. 2003) (same); *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 421 & n.5 (5th Cir. 2002) (same); *Tollett v. City of Kemah*, 285 F.3d 357, 369 n.* (5th Cir. 2002) (holding that entry of final judgment was an implicit denial of any outstanding motions).

[2] The district court had federal question jurisdiction over this case under 28 U.S.C. § 1331, and we have jurisdiction over this appeal of the district court's judgment under 28 U.S.C. § 1291.

No. 12-10969

## DISCUSSION

"We review a summary judgment *de novo*, applying the same standard as the district court." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011). Summary judgment is appropriate when the pleadings, viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 249. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington,* 276 F.3d 754, 759 (5th Cir. 2002). To avoid summary judgment on a qualified immunity defense, the plaintiffs must show more than "mere allegations." *Manis v. Lawson,* 585 F.3d 839, 843 (5th Cir. 2009).

## I.     Reynolds' Qualified Immunity

Section 1983 provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right. *See* 42 U.S.C. § 1983. Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (holding that officials in their individual capacities "may . . . be able to assert personal immunity defenses," including qualified immunity, that are not available in official-capacity suits); *Sanders–Burns v. City of Plano*, 594 F.3d 366, 371 (5th Cir. 2010) (stating that qualified immunity is "a defense

that is only relevant to individual capacity claims"). This court engages in a two-pronged analysis to determine whether a defendant is entitled to qualified immunity: inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001). "If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). "If the answer to either question is 'no,' the [government official is] entitled to qualified immunity." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). Courts may exercise discretion in deciding which of the two qualified immunity prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The summary judgment evidence does not show a genuine issue of fact as to whether Reynolds acted unreasonably in the situation with which she was confronted.[3] James argues that the termination proceedings, and Reynolds'

---

[3] In addition to asserting qualified immunity, Reynolds asserts she is entitled to "absolute immunity," but does not brief this contention on the merits. *Cf. Butz v. Economou*, 438 U.S. 478, 513-14 (1978) (holding administrative law judge absolutely immune from damages liability arising from performance of adjudicatory functions). Any contention regarding Reynold's absolute immunity is therefore waived. *See, e.g.*, Fed. R. App. P. 28(a)(9)(A) ("The appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]"); *United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009) ("As a general rule, a party waives any argument that it fails to brief on appeal.") (citing *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004)); *Tedder v. F. M. C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979) (holding an issue is abandoned on appeal where it was raised in statement of issues but not addressed elsewhere in brief).

decision upholding the proceedings, violated his Fifth, Sixth and Fourteenth Amendment rights because the defendants relied on the arrest affidavit in terminating his housing assistance and terminated his housing assistance based on a charge of domestic violence rather than a conviction.

First, with the benefit of liberal construction, James argues that his housing termination hearing violated due process.  The requirements of procedural due process are "flexible and call[ ] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  At a minimum, due process requires that notice and an opportunity to be heard "be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).  The ultimate protection afforded to a party raising procedural due process claims depends on (1) the private interest affected, (2) the risk of erroneous deprivation of such interest through the procedures used, (3) the probable value, if any, of additional or substitute procedural safeguards, and (4) the Government's interest in fiscal and administrative efficiency.  *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976); *see Goldberg v. Kelly*, 397 U.S. 254 (1970) (holding that procedural due process requires an evidentiary hearing prior to termination of public assistance payments to welfare recipients and that a city's benefit termination procedure was constitutionally inadequate where it failed to permit recipients to appear personally or without counsel before the deciding officer and did not permit the recipient to present oral evidence to that official or to confront or cross-examine adverse witnesses).

Here, James was granted a pretermination hearing, was permitted to appear personally and with the option of representation by legal counsel, and was allowed to present both oral and documentary evidence.  When the DHA uses a criminal record to terminate a tenant's Section 8 assistance, it must notify the tenant and give him or her "an opportunity to dispute the accuracy and

relevance of that record." § 982.553(d)(2).    James' assertion that Reynolds deprived him of his right to present documentary evidence is belied by the summary judgment evidence.    Reynolds reviewed the documents James submitted, determined that they were unsigned, and accordingly declined to include them in his hearing file.    The documents consisted of an unsigned affidavit, in which James asserts his innocence of the December 16, 2010 allegations, a letter from the City of Dallas stating that it would not investigate his complaint against the arresting officer, and the first page of what appears to be an appeal of his October 2010 conviction.    Reynolds reasonably could have rejected the above documents as not probative.    Moreover, James was permitted to testify, and during his testimony he admitted that he pleaded no contest to the October 2010 domestic violence charge.    There is no genuine issue of fact as to whether Reynolds proceeded in a manner that was objectively reasonable in conducting the hearing and making an adverse credibility determination given the foregoing facts.    Reynolds is entitled to qualified immunity on this claim.

Next, James argues that Reynolds' application of § 982.553(c) deprived him of his constitutional rights.    Section 982.553(c) provides that the Public Housing Authority "may terminate assistance for criminal activity by a household member . . . if the PHA determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity." As an initial matter, the preponderance of the evidence standard of review is the generally prevailing standard in civil cases (including civil housing termination proceedings, as here), *see, e.g.*, *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1881 (2011) (observing the preponderance of the evidence standard is the "default rule for civil cases"), and the Sixth Amendment rights that James invokes apply only to criminal proceedings and are therefore inapplicable here, *see* U.S. Const. amend. VI; *Austin v. United States*, 509 U.S. 602, 608 (1993) ("The protections

provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'").

Liberally construed, James' pleadings and brief assert that § 982.553(c) is unconstitutional because it provides for the termination of benefits based on a charge of domestic violence rather than a full conviction. However, even assuming for the purpose of argument that the regulation is constitutionally infirm for this reason, it still would not give rise to a § 1983 claim against Reynolds in this case. James did not cite, and research did not reveal, authority in support of his contention that § 982.553(c) is constitutionally infirm. To overcome qualified immunity, there must be evidence that § 982.553(c) or its use was unconstitutional under clearly established law, which he has not done. *See Cantrell v. City of Murphy*, 666 F.3d 911, 921 (5th Cir. 2012) (concluding that plaintiff failed to satisfy burden of showing officers' actions were objectively unreasonable where plaintiffs failed to cite any cases involving sufficiently similar situations that would have provided officer with notice of constitutional duty). James' bare allegation that any reasonable person in Reynolds' position would have known that such conduct was unconstitutional is insufficient to generate a material issue of fact on this point. Accordingly, the district court correctly granted Reynolds' motion for summary judgment based on her qualified immunity.

## II.    DHA's Municipal Liability

The district court was also correct to grant DHA's motion for summary judgment. The DHA, as a municipality, is a "person" subject to suit under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "[M]unicipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)

(citing *Monell*, 436 U.S. at 694). Courts will not hold municipalities liable for constitutional violations of its employees under a theory of *respondeat superior*. *Id.* Thus, § 1983 liability attaches "only where that municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). Therefore, "[t]he fact that a tortfeasor is an employee or an agent of a municipality is therefore not sufficient for city liability to attach; the municipality must cause the constitutional tort, which occurs 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (quoting *Monell*, 436 U.S. at 694).

"The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). A policymaker is "one who takes the place of the governing body in a designated area of city administration." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). He or she must "decide the goals for a particular city function and devise the means of achieving those goals." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). The Court must next consider whether the allegedly unconstitutional action constitutes a "custom or policy" of the municipality, which may take the form of, e.g., a policy statement formally announced by an official policymaker or a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d at 841.

To the extent that James' claims relate to Reynolds' decision to uphold DHA's termination of benefits, he has failed to identify an official policymaker. The summary judgment evidence does not reveal that Reynolds possesses any

authority to establish municipal policy in any regard; rather, it establishes that Reynolds has no authority to establish rules or policy for DHA. Even if the policymaker prong had been met, the evidence does not reveal a genuine issue of fact as to a municipal "custom or policy." Construed liberally, James' allegations center around two distinct actions: (1) DHA's initial decision to terminate James' benefits using a preponderance of the evidence standard to determine whether James had engaged in criminal activity, and (2) Reynolds' decision to uphold the DHA termination. With regard to Reynolds' decision to uphold the DHA decision, Reynolds is not a policymaker, and the evidence does not show any official or widespread policy with respect to Reynolds' decision.

With regard to the DHA's initial decision to terminate his housing assistance, James points only to DHA's application of 24 C.F.R. § 982.553(c) as the moving force behind DHA's alleged violation of his rights. However, DHA cannot be held liable for a policy that is not attributable to it; that regulation was promulgated by the federal government and does not give rise to DHA's liability as a municipality under § 1983.[4]

---

[4] With regard to the federal government's role, James states in his questions presented that the district court erred by failing to rule on his motion to join HUD as a defendant. However, James did not brief this argument on appeal other than listing it as a question presented. This argument is waived. *See* Fed. R. App. P. 28(a)(4); *Tedder*, 590 F.2d at 117 (holding an issue abandoned on appeal where raised in a statement of issues but not addressed elsewhere in brief); *Weaver v. Puckett,* 896 F.2d 126, 128 (5th Cir. 1990) ("[Rule 28] requires that the appellant's argument contain the reasons he deserves the requested relief 'with citation to the authorities, statutes and parts of the record relied on.'" *Weaver v. Puckett,* 896 F.2d 126, 128 (5th Cir. 1990)) (citations omitted); *Yohey v. Collins,* 985 F.2d 222, 225 (5th Cir. 1993) (although entitled to a liberal construction of their briefs, pro se litigants "must still brief contentions in order to preserve them"). In particular, James has not attempted to demonstrate why HUD would be a proper defendant in this action. *See Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. Urban Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993) ("Because HUD is a federal agency acting under color of federal law, we hold that the Plaintiffs have not stated a claim against it under § 1983.").

No. 12-10969

Accordingly, the district court properly granted summary judgment to DHA as the requirements for § 1983 liability have not been met.[5]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[5] Because James failed to brief his claims of violations of the Housing Act of 1937 and never explained the basis for these claims in the proceedings below, we deem such claims waived. *Cf. Banks v. Dall. Hous. Auth.*, 271 F.3d 605 (5th Cir. 2001) (holding Housing Act violations cannot be brought pursuant to § 1983).