United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 5, 2000 Decided February 16, 2001 

 No. 99-5430

 Eric Eldred, et al., 
 Appellants

 v.

 Janet Reno, 
 In her official capacity as Attorney General, 
 Appellee

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 99cv00065)

 Lawrence Lessig argued the cause for appellants. With 
him on the briefs were Charles R. Nesson, Jonathan L. 
Zittrain, Geoffrey S. Stewart, Gregory A. Castanias, and 
Portia A. Robert.

 Erik S. Jaffe was on the brief of amicus curiae Eagle 
Forum Education & Legal Defense Fund.

 Laura N. Gasaway, Lyman Ray Patterson, and Edward 
Walterscheid, appearing pro se, were on the brief of amici 
curiae Laura N. Gasaway, et al.

 Alfred Mollin, Counsel, U.S. Department of Justice, argued 
the cause for appellee. With him on the brief were David W. 
Ogden, Acting Assistant Attorney General, William Kanter, 
Counsel, and Wilma A. Lewis, U.S. Attorney.

 Peter L. Felcher, Carey R. Ramos, Carl W. Hampe, Lynn 
B. Bayard, Gaela K. Gehring-Flores, Allan Adler, Fritz E. 
Attaway, Joseph J. DiMona, I. Fred Koenigsberg, and James 
J. Schweitzer were on the brief of amici curiae The Sher-
wood Anderson Literary Estate Trust, et al.

 Before: Ginsburg, Sentelle, and Henderson, Circuit 
Judges.

 Opinion for the Court filed by Circuit Judge Ginsburg.

 Separate opinion dissenting in part filed by Circuit Judge 
Sentelle.

 Ginsburg, Circuit Judge: The plaintiffs in this case, corpo-
rations, associations, and individuals who rely for their voca-
tions or avocations upon works in the public domain, chal-
lenge the constitutionality of the Copyright Term Extension 
Act of 1998 (CTEA), Pub. L. No. 105-298, 112 Stat. 2827. 
This marks the first occasion for an appellate court to address 
whether the First Amendment or the Copyright Clause of the 
Constitution of the United States constrains the Congress 
from extending for a period of years the duration of copy-
rights, both those already extant and those yet to come. We 
hold that neither does.

 I. Background

 The CTEA amends various provisions of the Copyright Act 
of 1976, 17 U.S.C. s 101 et seq. The portions of the CTEA at 
issue here extend the terms of all copyrights for 20 years as 
follows: (1) For a work created in 1978 or later, to which an 
individual author holds the copyright, the Act extends the 
term to the life of the author plus 70 years. See Pub L. No. 

105-298 s 102(b)(1), 112 Stat. 2827; 17 U.S.C. s 302(a). (2) 
For a work created in 1978 or later that is anonymous, or 
pseudonymous, or is made for hire, the term is extended from 
75 to 95 years from the year of publication or from 100 to 120 
years from the year of creation, whichever occurs first. See 
Pub. L. No. 105-298 s 102(b)(3), 112 Stat. 2827; 17 U.S.C. 
s 302(c). (3) For a work created before 1978, for which the 
initial term of copyright was 28 years, the renewal term is 
extended from 47 to 67 years, thereby creating a combined 
term of 95 years. See Pub. L. No. 105-298 s 102(d), 112 Stat. 
2827; 17 U.S.C. s 304. In all three situations, therefore, the 
CTEA applies retrospectively in the sense that it extends the 
terms of subsisting copyrights. As a result, the CTEA better 
aligns the terms of United States copyrights with those of 
copyrights governed by the European Union. See S. Rep. 
No. 104-315, at 7-8 (1996); Council Directive 93/98, art. 7, 
1993 O.J. (L 290) 9.

 The CTEA is but the latest in a series of congressional 
extensions of the copyright term, each of which has been 
made applicable both prospectively and retrospectively. In 
1790 the First Congress provided, both for works "already 
printed" and for those that would be "[t]hereafter made and 
composed," initial and renewal terms of 14 years, for a 
combined term of 28 years. Act of May 31, 1790 s 1, 1 Stat. 
124, 124. In 1831 the Congress extended the initial term to 
28 years, thereby creating a combined term of 42 years. See 
Act of Feb. 3, 1831 s 1, 4 Stat. 436, 436. So the term 
remained until 1909, when the Congress extended the renew-
al term as well to 28 years, making for a combined term of 56 
years. See Act of March 4, 1909 s 23, 35 Stat. 1075, 1080.

 Between 1962 and 1974 the Congress passed a series of 
laws that incrementally extended subsisting copyrights. See 
Pub. L. No. 87-668, 76 Stat. 555 (1962); Pub. L. No. 89-142, 
79 Stat. 581 (1965); Pub. L. No. 90-141, 81 Stat. 464 (1967); 
Pub. L. No. 90-416, 82 Stat. 397 (1968); Pub. L. No. 91-147, 
83 Stat. 360 (1969); Pub. L. No. 91-555, 84 Stat. 1441 (1970); 
Pub. L. No. 92-170, 85 Stat. 490 (1971); Pub. L. No. 92-566, 
86 Stat. 1181 (1972); Pub. L. No. 93-573, title I, s 104, 88 
Stat. 1873 (1974). In 1976 the Congress altered the way the 

term of a copyright is computed so as to conform with the 
Berne Convention and with international practice. See H.R. 
Rep. No. 94-1476, at 135 (1976). Thenceforth the term would 
be the life of the author plus 50 years or, where there was no 
identifiable author, the earlier of 75 years from the year of 
publication or 100 years from the year of creation. See Pub. 
L. No. 94-553 ss 302-05, 90 Stat. 2541, 2572-76 (1976). The 
CTEA amends this scheme by adding 20 years to the term of 
every copyright.

 The plaintiffs filed this suit against the Attorney General of 
the United States to obtain a declaration that the CTEA is 
unconstitutional. Among the plaintiffs are a non-profit asso-
ciation that distributes over the internet free electronic ver-
sions of books in the public domain; a company that reprints 
rare, out-of-print books that have entered the public domain; 
a vendor of sheet music and a choir director, who respectively 
sell and purchase music that is relatively inexpensive because 
it is in the public domain; and a company that preserves and 
restores old films and insofar as such works are not in the 
public domain, needs permission from their copyright hold-
ers -- who are often hard to find -- in order to exploit them.

 The district court entered judgment on the pleadings in 
favor of the Government and dismissed the plaintiffs' case in 
its entirety. On appeal, the plaintiffs renew their claims that 
the CTEA both violates the First Amendment to the Consti-
tution and is in various ways inconsistent with the Copyright 
Clause of Article I, s 8 of the Constitution, which authorizes 
the Congress: "To promote the Progress of Science and 
useful Arts, by securing for limited Times to Authors and 
Inventors the exclusive Right to their respective Writings and 
Discoveries."

 II. Analysis

 The plaintiffs claim that the CTEA is beyond the power of 
the Congress and therefore unconstitutional for three rea-
sons: first, the CTEA, in both its prospective and retrospec-
tive applications, fails the intermediate scrutiny appropriate 
under the First Amendment; second, in its application to 

preexisting works, the CTEA violates the originality require-
ment of the Copyright Clause; and third, in extending the 
term of subsisting copyrights, the CTEA violates the "limited 
Times" requirement of the Copyright Clause -- a require-
ment that they say is informed by the goal of "promot[ing] 
the Progress of Science and useful Arts." Because each of 
these grounds presents a pure question of law, we consider 
them de novo. See, e.g., United States v. Popa, 187 F.3d 672, 
674 (D.C. Cir. 1999).

 A. First Amendment
 
 The First Amendment aspect of the plaintiffs' complaint 
attacks the CTEA not only in its application to subsisting 
copyrights but also insofar as it extends the terms of copy-
rights for works yet to be created. The Government ques-
tions plaintiffs' standing to complain in the latter regard.

 1. Standing
 
 Consider first the plaintiffs' standing with respect to works 
that, though now subject to subsisting copyrights, will in due 
course enter the public domain: The plaintiffs benefit from 
using works in the public domain and, but for the CTEA, they 
would be able to exploit additional works the copyrights to 
which would have expired in the near future. As such, they 
suffer an injury in fact that is traceable to the CTEA and that 
we could redress by holding the Act invalid. See Lujan v. 
Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The 
Government concedes as much.

 In view of the plaintiffs' standing to challenge the CTEA 
with respect to works already copyrighted, the Government's 
objection to the plaintiffs' standing with respect to works yet 
to be created seems very weak indeed. The plaintiffs benefit 
from works in the public domain and are deprived of that 
benefit so long as such works are under copyright. That is as 
true for works not yet created as for extant works on which 
the copyrights are about to expire; the Government does not 
draw any meaningful distinction between the two categories 
of works. We conclude therefore that the plaintiffs have 

standing to pursue their prospective claim under the First 
Amendment.

 2. The merits
 
 The decisions of the Supreme Court in Harper & Row 
Publishers Inc. v. Nation Enters., 471 U.S. 539 (1985), and of 
this court in United Video, Inc. v. FCC, 890 F.2d 1173 (1989), 
stand as insuperable bars to plaintiffs' first amendment theo-
ry. In Harper & Row the Court held that a magazine's 
advance publication of excerpts from the memoirs of former 
President Gerald Ford infringed the copyright thereon. 471 
U.S. at 569. In doing so the Court explained how the regime 
of copyright itself respects and adequately safeguards the 
freedom of speech protected by the First Amendment.

 [C]opyright's idea/expression dichotomy "strike[s] a defi-
 nitional balance between the First Amendment and the 
 Copyright Act by permitting free communication of facts 
 while still protecting an author's expression." No author 
 may copyright his ideas or the facts he narrates. 17 
 U.S.C. s 102(b). See e.g., New York Times Co. v. United 
 States, 403 U.S. 713, 726, n. (1971) (Brennan, J., concur-
 ring) (Copyright laws are not restrictions on freedom of 
 speech as copyright protects only form of expression and 
 not the ideas expressed).
 
Id. at 556 (citation omitted). The first amendment objection 
of the magazine was misplaced "[i]n view of the First Amend-
ment protections already embodied in the Copyright Act's 
distinction between copyrightable expression and uncopy-
rightable facts and ideas, and the latitude for scholarship and 
comment traditionally afforded by fair use." Id. at 560.

 In keeping with this approach, we held in United Video 
that copyrights are categorically immune from challenges 
under the First Amendment. There, certain cable companies 
petitioned for review of an FCC regulation providing that the 
supplier of a syndicated television program could agree to the 
program being broadcast exclusively by a single station in a 
local broadcast area. 890 F.2d at 1176-78. We rejected the 
first amendment aspect of their challenge as follows:

 In the present case, the petitioners desire to make 
 commercial use of the copyrighted works of others. 
 There is no first amendment right to do so. Although 
 there is some tension between the Constitution's copy-
 right clause and the first amendment, the familiar 
 idea/expression dichotomy of copyright law, under which 
 ideas are free but their particular expression can be 
 copyrighted, has always been held to give adequate 
 protection to free expression.
 
890 F.2d at 1191.

 The plaintiffs argue that "these authorities are restricted 
solely to the narrow case where a litigant demands a right to 
use otherwise legitimately copyrighted material," which case 
is "plainly distinct from [this] First Amendment challenge[ ] 
to the constitutionality of the statute granting a [copy]right in 
the first instance." We think the plaintiffs' purported distinc-
tion is wholly illusory. The relevant question under the First 
Amendment -- regardless whether it arises as a defense in a 
suit for copyright infringement or in an anticipatory challenge 
to a statute or regulation -- is whether the party has a first 
amendment interest in a copyrighted work. The works to 
which the CTEA applies, and in which plaintiffs claim a first 
amendment interest, are by definition under copyright; that 
puts the works on the latter half of the "idea/expression 
dichotomy" and makes them subject to fair use. This obvi-
ates further inquiry under the First Amendment.

 The plaintiffs cite no case to the contrary. In two of the 
cases they do cite, Reno v. ACLU, 521 U.S. 844, 871-79 
(1997), and Simon & Schuster, Inc. v. Members of NY State 
Crime Victims Bd., 502 U.S. 105, 115-23 (1991), the Supreme 
Court held statutes unconstitutional under the First Amend-
ment because they were unjustifiably content based; the 
plaintiffs here do not claim that the CTEA is anything but 
content neutral. In San Francisco Arts & Athletics, Inc. v. 
United States Olympic Committee, also cited by the plaintiffs, 
the Court did indeed apply heightened scrutiny under the 
First Amendment to a statute granting the United States 
Olympic Committee trademark-like protection for the word 

"Olympic." 483 U.S. 522, 535-41 (1987). Restricting the use 
of particular words "runs a substantial risk of suppressing 
ideas in the process," the Court explained. Id. at 532. As we 
have seen, however, copyright protection cannot embrace 
ideas; it therefore does not raise the same concern under the 
First Amendment. Finally, although the plaintiffs assert that 
the Second Circuit has reached the merits of a first amend-
ment challenge to an aspect of the Copyright Act of 1976, in 
fact that court, after reviewing the case law, concluded that 
the plaintiffs categorically lacked "any right to distribute and 
receive material that bears protection of the Copyright Act." 
Authors League of America v. Oman, 790 F.2d 220, 223 
(1986).

 As this is all the support plaintiffs muster for their proposi-
tion, we need not linger further in disposing of it. Suffice it 
to say we reject their first amendment objection to the CTEA 
because the plaintiffs lack any cognizable first amendment 
right to exploit the copyrighted works of others.

 B. Requirement of Originality
 
 The plaintiffs' second challenge ostensibly rests upon Feist 
Publications, Inc. v. Rural Telephone Service Co., in which 
the Supreme Court held that telephone listings compiled in a 
white pages directory are uncopyrightable facts: "The sine 
qua non of copyright is originality." 499 U.S. 340, 345 (1991). 
"Originality is a constitutional requirement" for copyright 
because the terms "Authors" and "Writings," as they appear 
in the Copyright Clause, "presuppose a degree of originality." 
Id. at 346.

 The plaintiffs reason from this that the CTEA cannot 
extend an extant copyright because the copyrighted work 
already exists and therefore lacks originality. Not so. Origi-
nality is what made the work copyrightable in the first place. 
A work with a subsisting copyright has already satisfied the 
requirement of originality and need not do so anew for its 
copyright to persist. If the Congress could not extend a 
subsisting copyright for want of originality, it is hard to see 
how it could provide for a copyright to be renewed at the 

expiration of its initial term -- a practice dating back to 1790 
and not questioned even by the plaintiffs today.

 The plaintiffs' underlying point seems to be that there is 
something special about extending a copyright beyond the 
combined initial and renewal terms for which it was initially 
slated. Nothing in Feist or in the requirement of originality 
supports this, however: All they tell us is that facts, like 
ideas, are outside the ambit of copyright. Undaunted in 
trying to advance their novel notion of originality, the plain-
tiffs point to cases that do not address the requirement of 
originality for copyright per se. They point to no case or 
commentary, however, that calls into question the distinction 
between a new grant of copyright -- as to which originality is 
an issue -- and the extension of an existing grant. That 
distinction reflects, at bottom, the difference between the 
constitutionally delimited subject matter of copyright and the 
Congress's exercise of its copyright authority with respect to 
that subject matter.

 The plaintiffs do point out that the Supreme Court has said 
the "Congress may not authorize the issuance of patents 
whose effects are to remove existent knowledge from the 
public domain, or to restrict free access to materials already 
available." Graham v. John Deere Co., 383 U.S. 1, 6 (1966). 
The Court similarly stated, over a century ago, that the 
issuance of a trademark could not be justified under the 
Copyright Clause because the subject matter of trademark is 
"the adoption of something already in existence." Trade-
mark Cases, 100 U.S. 82, 94 (1879). Applied mutatis mutan-
dis to the subject of copyright, these teachings would indeed 
preclude the Congress from authorizing under that Clause a 
copyright to a work already in the public domain.

 The plaintiffs read the Court's guidance more broadly, in 
the light of Feist, to mean that a work in the public domain 
lacks the originality required to qualify for a copyright. That 
is certainly not inconsistent with the Court's opinion: A work 
in the public domain is, by definition, without a copyright; 
where the grant of a copyright is at issue, so too is the work's 
eligibility for copyright, and thus the requirement of originali-

ty comes into play. We need not adopt a particular view on 
that point, however, as it has nothing to do with this case. 
Here we ask not whether any work is copyrightable -- 
indeed, the relevant works are already copyrighted -- but 
only whether a copyright may by statute be continued in 
force beyond the renewal term specified by law when the 
copyright was first granted. For the plaintiffs to prevail, 
therefore, they will need something other than the require-
ment of originality upon which to make their stand.

 C. The Limitation of "limited Times"
 
 We come now to the plaintiffs' contention that the CTEA 
violates the constitutional requirement that copyrights endure 
only for "limited Times." This claim at last speaks to the 
duration rather than to the subject matter of a copyright: If 
the Congress were to make copyright protection permanent, 
then it surely would exceed the power conferred upon it by 
the Copyright Clause.

 The present plaintiffs want a limit well short of the rule 
against perpetuities, of course. And they claim to have found 
it -- or at least a bar to extending the life of a subsisting 
copyright -- in the preamble of the Copyright Clause: "The 
Congress shall have power ... To promote the Progress of 
Science and useful Arts...." Their idea is that the phrase 
"limited Times" should be interpreted not literally but rather 
as reaching only as far as is justified by the preambular 
statement of purpose: If 50 years are enough to "promote 
... Progress," then a grant of 70 years is unconstitutional. 
Here the plaintiffs run squarely up against our holding in 
Schnapper v. Foley, 667 F.2d 102, 112 (1981), in which we 
rejected the argument "that the introductory language of the 
Copyright Clause constitutes a limit on congressional power." 
The plaintiffs, however, disclaim any purpose to question the 
holding of Schnapper; indeed, they expressly acknowledge 
"that the preamble of the Copyright Clause is not a substan-
tive limit on Congress' legislative power." Their argument is 
simply that "the Supreme Court has interpreted the terms 
'Authors' and 'Writings' in light of that preamble, and that 
this Court should do the same with 'limited Times.' "

 The problems with this argument are manifest. First, one 
cannot concede that the preamble "is not a substantive limit" 
and yet maintain that it limits the permissible duration of a 
copyright more strictly than does the textual requirement 
that it be for a "limited Time." Second, although the plain-
tiffs claim that Feist supports using the preamble to interpret 
the rest of the Clause, the Court in Feist never 
suggests that the preamble 
informs its interpretation of the substantive grant of power to 
the Congress (which there turned upon the meaning of "Au-
thors" and of "Writings," each standing alone). 499 U.S. at 
345-47. Similarly, the Trade-Mark Cases cited in Feist rest 
upon the originality implied by "invention [and] discovery" 
and by the "writings of authors," and make no reference at all 
to the preamble. 100 U.S. at 93-94.

 III. The Dissent

 The foregoing suffices to dispose of plaintiffs' argu-
ments -- as Judge Sentelle, dissenting, implicitly recog-
nizes -- and hence to resolve this case. Our dissenting 
colleague nonetheless adopts the narrow view of Schnapper 
urged by an amicus, although that argument is rejected by 
the actual parties to this case and therefore is not properly 
before us. See, e.g, 16A Charles Alan Wright et al., Federal 
Practice and Procedure s 3975.1 & n.3 (3d ed. 1999); Resi-
dent Council of Allen Parkway Vill. v. HUD, 980 F.2d 1043, 
1049 (5th Cir. 1993) (amicus constrained "by the rule that [it] 
generally cannot expand the scope of an appeal to implicate 
issues that have not been presented by the parties to the 
appeal"); cf. Lamprecht v. FCC, 958 F.2d 382, 389 (D.C. Cir. 
1992) (intervenor as nonparty "cannot expand the proceed-
ings" or "enlarge those issues presented"). This is particu-
larly inappropriate because a court should avoid, not seek 
out, a constitutional issue the resolution of which is not 
essential to the disposition of the case before it. Moreover, 
because the plaintiffs conspicuously failed to adopt the argu-
ment of the amicus, the Government was not alerted to any 
need to argue this point and did not do so. See Harmon v. 
Thornburgh, 878 F.2d 484, 494 (D.C. Cir. 1989) (court must 

"avoid unnecessary or premature constitutional rulings" and 
this concern "is heightened by the absence of meaningful 
argument by the parties on [constitutional] question"); Ash-
wander v. Tennessee Valley Authority, 297 U.S. 288, 346 
(1936) (Brandeis, J., concurring) ("Court will not 'anticipate a 
question of constitutional law in advance of the necessity of 
deciding it' ").

 Even were we to proceed as urged by the amicus and the 
dissent, however, we would only review the CTEA as we 
would any other exercise of a power enumerated in Article I. 
That is we would ask, following McCulloch v. Maryland, 17 
U.S. 316, 421 (1819), whether the CTEA is a "necessary and 
proper" exercise of the power conferred upon the Congress 
by the Copyright Clause; assuming Judge Sentelle is correct 
and Schnapper is wrong about the relationship of the pream-
ble to the rest of that Clause, this would require that the 
CTEA be an "appropriate" means, and "plainly adapted" to 
the end prescribed in the preamble, "promot[ing] Progress of 
Science and useful Arts." The Congress found that extend-
ing the duration of copyrights on existing works would, 
among other things, give copyright holders an incentive to 
preserve older works, particularly motion pictures in need of 
restoration. See S. Rep. No. 104-315, at 12 (1996). If called 
upon to do so, therefore, we might well hold that the applica-
tion of the CTEA to subsisting copyrights is "plainly adapted" 
and "appropriate" to "promot[ing] progress." See Ladd v. 
Law & Technology Press, 762 F.2d 809, 812 (9th Cir. 1985) 
(upholding the deposit requirement of the Copyright Act of 
1976 as "necessary and proper" because the purpose was "to 
enforce contributions of desirable books to the Library of 
Congress").

 Judge Sentelle concludes otherwise only because he sees a 
categorical distinction between extending the term of a sub-
sisting copyright and extending that of a prospective copy-
right. This distinction is not to be found in the Constitution 
itself, however. The dissent identifies nothing in text or in 
history that suggests that a term of years for a copyright is 
not a "limited Time" if it may later be extended for another 
"limited Time." Instead, the dissent suggests that the Con-

gress -- or rather, many successive Congresses -- might in 
effect confer a perpetual copyright by stringing together an 
unlimited number of "limited Times," although that clearly is 
not the situation before us. The temporal thrust of the 
CTEA is a good deal more modest: The Act matches United 
States copyrights to the terms of copyrights granted by the 
European Union, see Council Directive 93/98, art. 7, 1993 O.J. 
(L 290) 9; in an era of multinational publishers and instanta-
neous electronic transmission, harmonization in this regard 
has obvious practical benefits for the exploitation of copy-
rights. This is a powerful indication that the CTEA is a 
"necessary and proper" measure to meet contemporary cir-
cumstances rather than a step on the way to making copy-
rights perpetual; the force of that evidence is hardly diminish-
ed because, as the dissent correctly points out, the EU is not 
bound by the Copyright Clause of our Constitution. As for 
the dissent's objection that extending a subsisting copyright 
does nothing to "promote Progress," we think that implies a 
rather crabbed view of progress: Preserving access to works 
that would otherwise disappear -- not enter the public do-
main but disappear -- "promotes Progress" as surely as does 
stimulating the creation of new works.

 The position of our dissenting colleague is made all the 
more difficult because the First Congress made the Copy-
right Act of 1790 applicable to subsisting copyrights arising 
under the copyright laws of the several states. See Act of 
May 31, 1790, ss 1 and 3, 1 Stat. 124-25.* The construction 
of the Constitution "by [those] contemporary with its forma-
tion, many of whom were members of the convention which 
framed it, is of itself entitled to very great weight, and when 
it is remembered that the rights thus established have not 
been disputed [for this long], it is almost conclusive." Bur-
row-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 57 (1884). 

__________
 * Indeed, each of the four later Congresses that extended the 
terms of copyrights followed suit in doing so for subsisting as well 
as prospective copyrights. See Act of Feb. 3, 1831 s 1, 4 Stat. 436-
39; Act of March 4, 1909 s 23, 35 Stat. 1075-88; Pub. L. No. 
94-553 s 301, 90 Stat. 2541-2602 (1976); Pub. L. No. 105-298, 112 
Stat. 2827 (2000).

The plaintiffs, recognizing the import of this "almost conclu-
sive" point for their own theory, try to avoid it with the 
suggestion that application of the Act of 1790 to subsisting 
copyrights "is fully understandable under a Supremacy 
Clause analysis" in that it "clarif[ied] which law (state or 
federal) would govern th[o]se copyrights." But that will not 
do: A federal law is not valid, let alone supreme, if it is not 
first an exercise of an enumerated power. And the First 
Congress was clearly secure in its power under the Copyright 
Clause to extend the terms of subsisting copyrights beyond 
those granted by the States.

 Such guidance as the Supreme Court has given further 
confirms us in this view of the matter. The Court has made 
plain that the same Clause permits the Congress to amplify 
the terms of an existing patent. As early as 1843 it estab-
lished that the status of a particular invention and its protec-
tions

 must depend on the law as it stood at the emanation of 
 the patent, together with such changes as have been 
 since made; for though they may be retrospective in 
 their operation, that is not a sound objection to their 
 validity; the powers of Congress to legislate upon the 
 subject of patents is plenary by the terms of the Consti-
 tution, and as there are no restraints on its exercise, 
 there can be no limitation of their right to modify them 
 at their pleasure, so that they do not take away the 
 rights of property in existing patents.
 
McClurg v. Kingsland, 42 U.S. 202, 206.

 Within the realm of copyright, the Court has to the present 
era been similarly deferential to the judgment of the Con-
gress. "As the text of the Constitution makes plain, it is 
Congress that has been assigned the task of defining the 
scope of the limited monopoly that should be granted to 
authors or to inventors in order to give the appropriate public 
access to their work product;" that "task involves a difficult 
balance between [competing interests]" as reflected in the 
frequent modifications of the relevant statutes. Sony Corp. v. 
Universal City Studios, Inc., 464 U.S. 417, 429 (1984). And 

still more recently: "Th[e] evolution of the duration of copy-
right protection tellingly illustrates the difficulties Congress 
faces [in exercising its copyright power].... [I]t is not our 
role to alter the delicate balance Congress has labored to 
achieve." Stewart v. Abend, 495 U.S. 207, 230 (1990).

 IV. Conclusion:

 In sum, we hold that the CTEA is a proper exercise of the 
Congress's power under the Copyright Clause. The plain-
tiffs' first amendment objection fails because they have no 
cognizable first amendment interest in the copyrighted works 
of others. Their objection that extending the term of a 
subsisting copyright violates the requirement of originality 
misses the mark because originality is by its nature a thresh-
old inquiry relevant to copyrightability, not a continuing 
concern relevant to the authority of the Congress to extend 
the term of a copyright.

 Whatever wisdom or folly the plaintiffs may see in the 
particular "limited Times" for which the Congress has set the 
duration of copyrights, that decision is subject to judicial 
review only for rationality. This is no less true when the 
Congress modifies the term of an existing copyright than 
when it sets the term initially, and the plaintiffs -- as 
opposed to one of the amici -- do not dispute that the CTEA 
satisfies this standard of review. The question whether the 
preamble of the Copyright Clause bars the extension of 
subsisting copyrights -- a question to which the analysis in 
Schnapper seems to require a negative answer -- may be 
revisited only by the court sitting en banc in a future case in 
which a party to the litigation argues the point.

 For the foregoing reasons, the decision of the district court 
is

 Affirmed.

 Sentelle, Circuit Judge, dissenting in part: While I con-
cur with much of the majority's opinion, insofar as it holds 
constitutional the twenty-year or more extension of copyright 
protection for existing works, I dissent. This issue calls upon 
us to consider the scope of one of the clauses granting 
enumerated powers to Congress, specifically, Art. I, s 8, cl. 8:

 Congress shall have power ... to promote the progress 
 of science and useful arts, by securing for limited times 
 to authors and inventors the exclusive right to their 
 respective writings and discoveries....
 
In ascertaining the breadth of an enumerated power, I would 
follow the lead of the United States Supreme Court in United 
States v. Lopez, 514 U.S. 549, 552 (1995), and "start with first 
principles." The governing first principle in Lopez and in the 
matter before us is that "[t]he Constitution creates a Federal 
Government of enumerated powers." 514 U.S. at 552 (citing 
Art. I, s 8). The Framers of the Constitution adopted the 
system of limited central government "to ensure the protec-
tion of our fundamental liberties." Gregory v. Ashcroft, 501 
U.S. 452, 458 (1991) (internal quotations and citations omit-
ted). The Lopez decision, considering the validity of the so-
called Gun-Free School Zones Act, reminded us that "con-
gressional power under the Commerce Clause ... is subject 
to outer limits." 514 U.S. at 556-57; see also United States 
v. Morrison, 120 S. Ct. 1740, 1748-49 (2000).

 It would seem to me apparent that this concept of "outer 
limits" to enumerated powers applies not only to the Com-
merce Clause but to all the enumerated powers, including the 
Copyright Clause, which we consider today. In determining 
whether the legislation before it in such cases as Lopez 
exceeded the outer limit of the authority granted under the 
Commerce Clause, the Lopez Court laid out a precise outline 
concededly not applicable by its terms to the construction of 
other clauses, but I think most useful in conducting the same 
sort of examination of the outer limits of any enumerated 
power. As a part of that analysis, the Court examined the 
extension of congressional authority to areas beyond the core 
of the enumerated power with a goal of determining whether 

the rationale offered in support of such an extension has any 
stopping point or whether it would lead to the regulation of 
all human activity. See 514 U.S. at 564 ("Thus, if we were to 
accept the Government's arguments, we are hard pressed to 
posit any activity by an individual that Congress is without 
power to regulate."). I fear that the rationale offered by the 
government for the copyright extension, as accepted by the 
district court and the majority, leads to such an unlimited 
view of the copyright power as the Supreme Court rejected 
with reference to the Commerce Clause in Lopez.

 What then do I see as the appropriate standard for limiting 
that power? Again, the Lopez decision gives us guidance as 
to the application of first principles to the determination of 
the limits of an enumerated power. Citing Gibbons v. Ogden, 
22 U.S. (9 Wheat.) 1, 189-190 (1824), the Lopez Court ac-
knowledged "that limitations on the commerce power are 
inherent in the very language of the Commerce Clause." 514 
U.S. at 553. Just so with the Copyright Clause. What does 
the clause empower the Congress to do?

 To promote the progress of science and useful arts, by 
 securing for limited times to authors and inventors the 
 exclusive right to their respective writings and discover-
 ies....
 
That clause empowers the Congress to do one thing, and one 
thing only. That one thing is "to promote the progress of 
science and useful arts." How may Congress do that? "By 
securing for limited times to authors and inventors the exclu-
sive right to their respective writings and discoveries." The 
clause is not an open grant of power to secure exclusive 
rights. It is a grant of a power to promote progress. The 
means by which that power is to be exercised is certainly the 
granting of exclusive rights--not an elastic and open-ended 
use of that means, but only a securing for limited times. See 
Stewart v. Abend, 495 U.S. 207, 228 (1990) ("The copyright 
term is limited so that the public will not be permanently 
deprived of the fruits of an artist's labors."). The majority 
acknowledges that "[i]f the Congress were to make copyright 
protection permanent, then it surely would exceed the power 

conferred upon it by the Copyright Clause." Maj. Op. at 10. 
However, there is no apparent substantive distinction be-
tween permanent protection and permanently available au-
thority to extend originally limited protection. The Congress 
that can extend the protection of an existing work from 100 
years to 120 years; can extend that protection from 120 years 
to 140; and from 140 to 200; and from 200 to 300; and in 
effect can accomplish precisely what the majority admits it 
cannot do directly. This, in my view, exceeds the proper 
understanding of enumerated powers reflected in the Lopez 
principle of requiring some definable stopping point.

 Returning to the language of the clause itself, it is impossi-
ble that the Framers of the Constitution contemplated perma-
nent protection, either directly obtained or attained through 
the guise of progressive extension of existing copyrights. 
The power granted by the clause again is the power "to 
promote the progress of science and useful arts." As stated 
above, Congress is empowered to accomplish this by securing 
for limited times exclusive rights. Extending existing copy-
rights is not promoting useful arts, nor is it securing exclusiv-
ity for a limited time.

 The government has offered no tenable theory as to how 
retrospective extension can promote the useful arts. As the 
Supreme Court noted in Lopez and again in United States v. 
Morrison, that Congress concluded a given piece of legisla-
tion serves a constitutional purpose "does not necessarily 
make it so." Lopez, 514 U.S. at 557 n.2 (internal quotes 
omitted); Morrison, 120 S. Ct. at 1752. Pressed at oral 
argument, counsel for the government referred to keeping 
the promise made in the original grant of exclusivity for a 
limited time. The easy answer to this assertion is that 
Congress is not empowered to "make or keep promises" but 
only to do those things enumerated in Article I. The second 
problem with the government's assertion is that Congress 
made no promise to commit such an extension but only to 
secure the exclusive rights for the original limited period. 
Thirdly, the means employed by Congress here are not the 
securing of the exclusive rights for a limited period, but 
rather are a different animal altogether: the extension of 

exclusivity previously secured. This is not within the means 
authorized by the Copyright Clause, and it is not constitution-
al.

 The majority responds to this problem of the statute's 
exceeding the constitutional grant by reliance on Schnapper 
v. Foley, 667 F.2d 102 (D.C. Cir. 1981), "in which we rejected 
the argument 'that the introductory language of the Copy-
right Clause constitutes a limit on congressional power.' " 
Maj. Op. at 10 (quoting 667 F.2d at 112). I will concede that 
it does not matter if I disagree with the language of Schnap-
per (which in fact I do) as it is our Circuit precedent and we 
are bound by its holding unless and until that holding is 
changed by this court en banc or by the higher authority of 
the Supreme Court. See, e.g., LaShawn A. v. Barry, 87 F.3d 
1389, 1395 (D.C. Cir. 1996) (en banc) ("One three-judge panel 
... does not have the authority to overrule another three-
judge panel of the court. That power may be exercised only 
by the full court."(citations omitted)); United States v. Kolter, 
71 F.3d 425, 431 (D.C. Cir. 1995) ("This panel would be bound 
by [a prior] decision even if we did not agree with it.").

 Therefore, it is immaterial that the prior opinion is, in my 
view, erroneous in styling the granting clause of the sentence 
as merely introductory when in fact it is the definition of the 
power bestowed by that clause. Thus, unless and until this 
precedent is wiped away, if Schnapper has held that we may 
not look to the language of this phrase to determine the 
limitations of the clause then I must concede that we are 
bound by that holding and join the majority's result. Howev-
er, it does not appear to me that this is the holding of 
Schnapper. The Schnapper Court dealt with limited ques-
tions related to the application of the copyright laws to works 
commissioned by the U.S. government. In answering those 
questions, the Schnapper Court held that "Congress need not 
'require that each copyrighted work be shown to promote the 
useful arts.' " 667 F.2d at 112 (quoting Mitchell Bros. Film 
Group v. Cinema Adult Theater, 604 F.2d 852, 860 (5th Cir. 
1979)). It was in that context that the Schnapper Court 
employed the wording relied upon by the majority concerning 
the "introductory language" of the Copyright Clause. Inso-

far as that wording is taken to be anything more than the 
determination concerning that limited analysis, it is not a 
holding but simply dicta (perhaps obiter dicta) and not bind-
ing on future panels.

 Rather, the Schnapper analysis again takes us back to the 
Lopez approach to judicial interpretation of the enumerated 
powers clauses. In Lopez, one of the means employed to 
determine the constitutionality of extended application of the 
Commerce Clause is an elemental inquiry into whether in 
each case the purportedly regulated action "in question af-
fects interstate commerce." 514 U.S. at 561. However, the 
jurisdictional element is not necessary under Lopez analysis 
of Commerce Clause regulation where Congress is directly 
regulating "the use of the channels of interstate commerce" 
or "persons or things in interstate commerce." Id. at 558. 
Similarly, I suggest that in analyzing the extent of congres-
sional power under the Copyright Clause, the Schnapper 
holding that each individual application of copyright protec-
tion need not promote the progress of science and the useful 
arts does not mean that Congress's power is otherwise unlim-
ited, anymore than the lack of a necessity for case-by-case 
analysis of the effect on interstate commerce validates any-
thing Congress may wish to do under the rubric of the 
Commerce Clause. Though, under Schnapper, we may not 
require that each use of a copyright protection promote 
science and the arts, we can require that the exercise of 
power under which those applications occur meet the lan-
guage of the clause which grants the Congress the power to 
enact the statute in the first place. This the extension does 
not do. It is not within the enumerated power.

 The majority suggests that my reading of Schnapper is 
somehow foreclosed by the fact that it accepts the argument 
of an amicus. See Maj. Op. at 11 (citing 16A Charles Alan 
Wright et al., Federal Practice and Procedure s 3975.1 & 
n.3 (3d ed. 1999); Resident Council of Allen Parkway Vill. v. 
HUD, 980 F.2d 1043, 1049 (5th Cir. 1993)). The disposition I 
suggest would offend nothing in either Professor Wright's 
treatise or the cases aligned with it. Neither I nor the 
amicus raise any issue not raised by the parties to the case, 

nor disposed of by a majority of the court. Appellants raise 
the issue "whether ... the Copyright Clause of the Constitu-
tion of the United States constrains the Congress from 
extending for a period of years the duration of copyrights, 
both those already extant and those yet to come." Maj. Op. 
at 2 (emphasis added). The majority addresses that issue 
and holds against the appellant. Maj. Op. at 15 ("we hold 
that the CTEA is a proper exercise of the Congress's power 
under the Copyright Clause"). That the amicus argues more 
convincingly in appellants' favor on the issue raised by the 
appellants than they do themselves is no reason to reject the 
argument of the amicus. Indeed, our Circuit Rules provide 
that an amicus brief "must avoid repetition of facts or legal 
arguments made in the principal (appellant/petitioner or 
appellee/respondent) brief and focus on points not made or 
adequately elaborated upon in the principal brief, although 
relevant to the issues before this court." Circuit Rule 29. 
Obviously that is precisely what the amicus has done in this 
case.

 Resident Council of Allen Parkway Village, relied on by 
the majority, highlights this difference between introducing 
issues not raised by the parties on the one hand and making 
new arguments for issues otherwise properly raised on the 
other. As the Fifth Circuit noted in that case, "[w]e are 
constrained only by the rule that an amicus curiae generally 
cannot expand the scope of an appeal to implicate issues that 
have not been presented by the parties to the appeal." 980 
F.2d at 1049 (emphasis added).

 Our Circuit Rule and the Fifth Circuit are in good company 
in allowing amici to make additional arguments that address 
issues which the parties have raised but not argued in the 
same fashion. The Supreme Court has approved precisely 
that approach. In Teague v. Lane, 489 U.S. 288 (1989), that 
Court considered a question of retroactivity as to a fair cross-
section jury venire in a case also raising a claim under Batson 
v. Kentucky, 476 U.S. 79 (1986). The Court noted that "[t]he 
question of retroactivity with regard to petitioner's fair cross 
section claim has been raised only in an amicus brief." 489 
U.S. at 300. Noting that the "question is not foreign to the 

parties, who have addressed retroactivity with respect to 
petitioner's Batson claim," id., the Court proceeded to ad-
dress the merits of the argument.

 Nor are we constrained by the parties' apparent agreement 
as to the state of the law under Schnapper. The Supreme 
Court has made it clear that we cannot be bound by stipula-
tions of law between the parties, where there is "a real case 
and controversy extending to that issue." United States 
Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 
439, 446 (1993). As the High Court put it, " '[w]hen an issue 
or claim is properly before the court, the court is not limited 
to the particular legal theories advanced by the parties, but 
rather retains the independent power to identify and apply 
the proper construction of governing law.' " Id. (quoting 
Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991)).

 I find two other arguments the majority invokes against 
my dissent unpersuasive. The enactment by the first Con-
gress in 1790 regularizing the state of copyright law with 
respect to works protected by state acts preexisting the 
Constitution appears to me to be sui generis. Necessarily, 
something had to be done to begin the operation of federal 
law under the new federal Constitution. The Act of May 31, 
1790, 1 Stat. 124, created the first (and for many decades 
only) federal copyright protection; it did not extend subsist-
ing federal copyrights enacted pursuant to the Constitution. 
Cf. Wheaton v. Peters, 33 U.S. (8 Pet.) 591, 661 (1834) 
("Congress, then, by this [copyright] act, instead of sanction-
ing an existing right, as contended for, created it."). The fact 
that the CTEA "matches United States copyrights to the 
terms of copyrights granted by the European Union," Maj. 
Op. at 13 (citing Council Directive 93/98, art. 7, 1993 O.J. (L 
290) 9), is immaterial to the question. Neither the European 
Union nor its constituent nation states are bound by the 
Constitution of the United States. That Union may have all 
sorts of laws about copyrights or any other subject which are 
beyond the power of our constitutionally defined central 
government.

 Therefore, I respectfully dissent.